UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00428-JPH-KMB |
| | ) |
| MAYS, | ) |
| MANNING, | ) |
| KERIS, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO EXHAUSTION DEFENSE AND PROVIDING NOTICE OF INTENT TO GRANT SUMMARY JUDGMENT INDEPENDENT OF THE MOTION**

Plaintiff Joshua Jackson, at relevant times an inmate at Pendleton Correctional Facility and New Castle Correctional Facility filed this action pursuant to 42 U.S.C. § 1983 asserting Eighth Amendment deliberate indifference claims, Fourteenth Amendment due process claims, and state law assault and battery claims. Defendants—William Mays, M.D.; Ellen Keris, PsyD.; and Lindsey Manning, N.P. ("Centurion Defendants")—move for summary judgment arguing that Mr. Jackson failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit.[1] For the reasons explained below, the motion, dkt. [72], is **DENIED.** In addition, the Court **notifies** Centurion

---

[1] Since the filing of Centurion Defendants' motion for summary judgment, Mr. Jackson filed a motion to dismiss defendant, Celeste Jones, N.P., dkt. 88, which was granted, dkt. 89. Because N.P. Jones is no longer a defendant, the Court does not discuss the claims against her.

1

Defendants of its intent to grant summary judgment for Mr. Jackson on the exhaustion issue.

## I.
## Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. See Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

### A. Mr. Jackson's Amended Complaint

Mr. Jackson alleges that, in April of 2022, when he was at Pendleton, Dr. Mays and N.P. Manning forced him to take antipsychotic medications without his consent, and that these medications have caused him many side effects. Dkt. 46 at 6. He also alleges that, after he was transferred to New Castle, Dr. Mays and Dr. Keris caused him to continue to receive antipsychotic medications involuntarily and did not provide him any treatment for the side effects. *Id.* at 7. Mr. Jackson alleges that these actions violated his constitutional rights and Indiana state law. *Id.* at 7–8. The only claims at issue in the Centurion Defendants' exhaustion summary judgment motion are the

Eighth Amendment claims against Dr. Mays, Dr. Keris, and N.P. Manning, *see* dkt. 72 at 1, so the Court does not discuss the other claims further.

### B. IDOC's Grievance Process

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process that provides inmates an opportunity to attempt to resolve grievances before filing suit in federal court. Dkt. 72-2 at 2 ¶ 6. The Grievance Process in effect at the time of the events at issue in this lawsuit consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility warden or the warden's designee; and (3) a written appeal to the IDOC Grievance Manager, which is deemed to have been denied if the IDOC Grievance Manager does not respond. *Id.* at 10, 20. Successful exhaustion of the Grievance Process requires an inmate to timely complete all three steps. *Id.* at 2 ¶ 7.

Inmates may grieve actions of individual staff and "[a]ny other concerns relating to conditions of care or supervision within the Department or its contractors[.]" *Id.* at 10. A grievance must be submitted to the Offender Grievance Specialist on a State Form 45471 titled "Offender Grievance" within 10 business days of the incident that gave rise to the concern. *Id.* at 16.

4

### C. Mr. Jackson's Use of the Grievance Process

Mr. Jackson filed two grievances that are arguably relevant to his claims in this lawsuit.[2] The Court discusses them below.[3]

### i. Grievance 141717 at Pendleton

In Grievance 141717, Mr. Jackson complained of "injuries from being on antipsychotic medications" and high blood pressure medications, and assault by prison officials. Dkt. 72-1 at 36. He mentioned speaking to a doctor who documented such injuries and requested an internal affairs investigation "to investigate the injuries that are documented on [his] medical records." *Id.* This grievance was denied. *Id.* at 35.

Mr. Jackson filed an appeal. *Id.* at 32-34. He offered no additional information, only mentioning that he would seek redress in the U.S. District Court. *Id.* The appeal was denied on July 11, 2022 with Warden Dennis Reagle responding that there was "[no] evidence of any recent injuries [Mr. Jackson had] received" and "without further information" he could offer no further remedy. *Id.* at 31.

Mr. Jackson signed the form indicating that he disagreed with the facility response and wanted to appeal to the Department Grievance Manager. *Id.* at

---

[2] Grievance #141718 was filed at Pendleton and relates to urinary based symptoms and injuries that are not relevant to this claim. It did not put the Defendants on notice of the claims at issue in this case, so it is not discussed here.

[3] Mr. Jackson included an additional grievance and Appeal of the Treatment Review Decision in his response to the Motion for Summary Judgment by the Defendants. Dkt. 79-2. Grievance #139645 relates to events that took place in March 2022. However, the events in Mr. Jackson's complaint took place in and after April 2022, so this grievance could not exhaust the claims in this case. Additionally, Mr. Jackson's Appeal of the Treatment Review Decision does not satisfy any part of the Offender Grievance Process.

5

30. The Department Grievance Manager concurred with the facility-level responses and denied the appeal. *Id.* at 28.

### ii.  Grievance 23-157356 at New Castle

About one year later, on July 17, 2023, Mr. Jackson was transferred from Pendleton to New Castle. Dkt. 72-2 at 3 ¶ 12. About six days later, on July 23, 2023, he submitted Grievance 23-157356. *Id.* at 3–4 ¶¶ 13, 14; dkt. 72-2 at 27-35. In that grievance Mr. Jackson complained that his psychiatrist, N.P. Jones, refused to take him off involuntary antipsychotic medications that were "harmful" and caused him a myriad of symptoms including "overheating of the body, throwing up, headaches, stomach aches, body pains and high blood pressure with fluttered heartbeats." Dkt. 72-2 at 35. He specifically requested that he be taken off antipsychotic medications. *Id.* This grievance was denied on September 13, 2023, because N.P. Jones did not have the authority to stop administering these involuntary medications, which "go through a committee and [are] ordered through the court." *Id.* at 32.

Mr. Jackson filed an appeal on September 26, 2023. *Id.* at 30. In the appeal, he included more names of medical professionals, including defendants Dr. Keris and Dr. Mays, who allegedly violated his rights and caused him great pain through antipsychotic medications. *Id.* The warden's designee Bryan Vandervort responded on October 3, 2023, stating that "the facility can offer no relief in regards to medical issues/medication" and Mr. Jackson would need to

"work with Centurion Health or take the next step in the [grievance] process." *Id.* at 29.

On October 5, 2023, Mr. Jackson signed the form indicating that he disagreed with the facility response and wanted to appeal to the Department Grievance Manager. *Id.* at 28. The Department Grievance Manager concurred with the facility-level responses and denied the appeal. *Id.* at 27.

### III. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). A grievance must contain sufficient detail to "put the prison and individual officials on notice of the claim" and provide them with the opportunity to address the underlying problem. *Jones v. Bock*, 549 U.S. 199, 205 (2007).

7

In their partial summary judgment motion, Centurion Defendants argue that Mr. Jackson failed to exhaust his administrative remedies by failing to complete the grievance process for any grievances directly related to the issues raised in his amended complaint, and thus his Eighth Amendment claims against Dr. Mays and N.P. Manning while at Pendleton, and Dr. Mays and Dr. Keris at New Castle, are precluded as a matter of law by the PLRA. Dkt. 72 at 1; Dkt. 73 at 1.

### A. N.P. Manning

N.P. Manning treated Mr. Jackson only at Pendleton. Mr. Jackson filed only one relevant grievance while he was there—#141717. Centurion Defendants do not dispute that this grievance was fully exhausted, but argue that it did not put them on notice of Mr. Jackson's claims because it sought relief in the form of an internal affairs investigation for several alleged incidents involving prison officials, instead of seeking relief in the form of additional, or different, medical care. Dkt. 73 at 15.

Mr. Jackson, however, requested an investigation into "the injuries documented on [his] medical records," which would include the injuries related to antipsychotic medications identified in his grievance. Dkt. 72-1 at 36. The fact that Mr. Jackson did not explicitly request different medical care is not dispositive because the core of his grievance was his medical care, and he identified the specific medical issues that concerned him. *See Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) ("[A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the

8

wrong for which redress is sought."). That level of detail about his complaint in the grievance provided "a fair opportunity to address his complaint," which is enough to exhaust. *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011) ("[Maddox] complained about an administrative decision . . . and it belies reason to suggest that prison administrators . . . were unaware of who was responsible for that decision."). Because this grievance was sufficient to put staff on notice that the antipsychotic medications were harming Mr. Jackson, N.P. Manning is not entitled to summary judgment on the Eighth Amendment deliberate indifference claim. *See Jones*, 549 U.S. at 205 ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement.").

### B. Dr. Mays

Dr. Mays treated Mr. Jackson at both Pendleton and New Castle. Centurion Defendants argue that Mr. Jackson's Eighth Amendment deliberate indifference claim against Dr. Mays should be dismissed to the extent that it relates to events at Pendleton because Mr. Jackson's grievances did not adequately put Centurion Defendants on notice of his claim. Dkt. 73 at 16. But, for the same reasons as for the claim against N.P. Manning, Mr. Jackson did exhaust those claims.

As to Mr. Jackson's time at New Castle, it is undisputed that Grievance #23-157356 was fully exhausted and raised the issue of involuntary administration of antipsychotic medications. *See* dkt. 73 at 17. Centurion Defendants argue that this grievance was insufficient to put them on notice of Mr. Jackson's claims of inadequate medical treatment and medication

9

management. *Id.* They also argue that Mr. Jackson failed to file a timely grievance within 10 days because he did not mention Dr. Mays's name until the appeal of Grievance #23-157356.

Mr. Jackson's grievance, however, said that the involuntary antipsychotic medications were "harmful" and caused him a myriad of symptoms including "overheating of the body, throwing up, headaches, stomach aches, body pains and high blood pressure with fluttered heartbeats." Dkt. 72-2 at 35. For relief, Mr. Jackson sought to be "remove[d] off of antipsychotic medication." *Id.* That is enough to provide notice of Mr. Jackson's medication-related medical care claims, *see Schillinger*, 954 F.3d at 995 ("[A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought."), and "a fair opportunity to address his complaint," *Maddox*, 655 F.3d at 721–22.

Mr. Jackson's failure to name Dr. Mays specifically until his appeal is also not fatal to his claim because inmates are not required to name each individual in the grievance. *See Jones*, 549 U.S. at 217, 219 ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement'" in order to exhaust); *Schillinger*, 954 F.3d at 995. And here, the nature of the grievance gave enough detail to identify those responsible for the medical care at issue. *See Maddox*, 655 F.3d at 721–22 ("[Maddox] complained about an administrative decision . .

10

. and it belies reason to suggest that prison administrators . . . were unaware of who was responsible for that decision.").[4]

Thus, Dr. Mays is not entitled to summary judgment on Mr. Jackson's Eighth Amendment deliberate indifference claim.

### C. Dr. Keris

Dr. Keris treated Mr. Jackson only while he was at New Castle. Centurion Defendants argue that Mr. Jackson's Eighth Amendment deliberate indifference claim against Dr. Keris should be dismissed because Mr. Jackson did not adequately put Centurion Defendants on notice of his claim against her because he did not include her name in the original text of Grievance #23-157356, but only mentioned her in his appeal more than 10 days after the event causing the need for a grievance. However, as explained with respect to the claim against Dr. Mays, Mr. Jackson provided enough detail to exhaust this claim against the people responsible for his medical care, because he put the prison on notice that the antipsychotic medications were the issue raised in the grievance. *See Schillinger*, 954 F.3d at 995. And Mr. Jackson was not required to name each defendant specifically in the grievance. *See Jones*, 549 U.S. at 205.

Dr. Keris is thus not entitled to summary judgment on Mr. Jackson's Eighth Amendment deliberate indifference claim.

---

[4] Moreover, at least as to Dr. Mays, the alleged harm was ongoing from Mr. Jackson's time at Pendleton so he was not required to exhaust again. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.").

### IV. Rule 56(f) Notice and Further Proceedings

For the reasons stated above, Centurion Defendants' motion for summary judgment, dkt. [72], is **denied**.

Further, under Rule 56(f)(1), the Court gives Centurion Defendants notice of its intent to grant summary judgment in Mr. Jackson's favor on the issue of exhaustion because, for the reasons above, the fully exhausted grievances provided fair notice of his claims. Centurion Defendants have **through April 24, 2025,** to show cause why summary judgment should not be granted on exhaustion in Mr. Jackson's favor. Alternatively, Centurion Defendants may withdraw their affirmative defense by this date. If they do not respond in the time provided, the Court will deem the exhaustion defense resolved in Mr. Jackson's favor and direct Magistrate Judge Barr to enter a discovery schedule.

**SO ORDERED.**

Date: 3/24/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSHUA JACKSON
222115
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362
All electronically registered counsel